☑ Original      ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No.24-838M(NJ) |
| information associated with certain Facebook and Instagram ) | |
| user IDs that are stored at premises owned, maintained, ) | |
| controlled, or operated by Meta Platforms, Inc. ("Meta"), a social ) | |
| networking company headquartered in Menlo Park, California ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 4/9/2024      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*      ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:3/26/2024 @10:35 a.m. _____

                                         *Judge's signature*

City and state:      Milwaukee, WI      Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

To the extent that the information described in Attachment B is within the possession, custody, or control of Instagram/Facebook that is stored at premises owned, maintained, controlled or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California, Instagram/Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| BariWith TheNats | 61552573884141 | January 14, 2024 to February 1, 2024 |
| Bäri Löwëšt ĬññäMïl | 100035266607801 | January 14, 2024 to February 1, 2024 |
| Thanks ForYo Bape | 100089864558713 | January 14, 2024 to February 1, 2024 |
| Zavaesha Stinson | 100043712520182 | January 14, 2024 to February 1, 2024 |
| Nene Lõww | 100082689077562 | January 14, 2024 to February 1, 2024 |

| INSTAGRAM ACCOUNT USERNAME | INSTAGRAM WEB ADDRESS | DATES |
|---|---|---|
| Bta_bari20 | https://www.instagram.com/bta_bari20/ | January 14, 2024 to February 1, 2024 |
| Nene_loww | https://www.instagram.com/nene_loww/ | January 14, 2024 to February 1, 2024 |

16

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc. ("Meta"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in **Attachment A**:

(a)      All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for user Account Name with the Usernames and Account IDs listed in **Attachment A**.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook or Instagram activities from **January 14, 2024 to February 1, 2024**;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

17

the user is a member, including the groups' Facebook/Instagram group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from **January 14, 2024 to February 1, 2024,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from **January 14, 2024 to February 1, 2024**;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service used by the user;

18

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook/Instagram posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook/Instagram and any person regarding the user or the user's Facebook/Instagram account, including contacts with support services and records of actions taken.

(r) All content (whether created, uploaded, or shares by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), image stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from **January 14, 2024 to February 1, 2024**.

(s) All content, records, and other information relating to communications sent from or received by the accounts in Attachment A including by not limited to:

    a. The content of all communications sent from or received by the Accounts listed in Attachment A, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available.

    b. All records and other information about direct, group, and disappearing messages sent from or received by the Accounts listed in Attachment A including dates and times, methods, sources, and destinations (including

usernames and account numbers), and status (such as delivered, opened, replayed, screenshot)

 c. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants

 d. All associated logs and metadata,

(t) All content, records, and other information relating to all other interactions between the Accounts listed in Attachment A and other Instagram users from **January 14, 2024 to February 1, 2024** including but not limited to:

 a. Interactions by other Instagram users with the Accounts listed in Attachment A or its content, including posts, comments, like, tags, follows (including follows unfollows, approved and denied follow requests, and blocks and unblocks), shares invitations, and mentions

 b. All users the Accounts listed in Attachment A has followed including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account

 c. All contacts and related sync information

 d. All associated logs and metadata

Meta is hereby ordered to disclose the above information to the government within 10 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 2119 (Carjacking), 18 U.S.C. § 924(c) (possessing and/or brandishing a firearm during a crime of violence) involving Jabari GRIFFIN and Zaveasha STINSON, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Jabari GRIFFIN, Zaveasha STINSON, and others related to the relevant offense conduct of illegal use and possession of firearms and carjacking;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of firearms and sale and use of controlled substances, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be

21

conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Case 2:24-mj-00838-NJ    Filed 03/26/24    Page 9 of 33    Document 1

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with certain Facebook and Instagram user IDs that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a social networking company headquartered in Menlo Park, California | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 24-838M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized):*

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Brandishing a Firearm During the Commission of a Crime of Violence |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kevin Kaiser, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means).*

Date: 3/26/2024

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEACH WARRANT

I, Kevin Kaiser, being first duly sworn on oath, hereby depose and state as follows:

## INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1.      I make this affidavit in support of an application for a search warrant for information associated with certain Facebook and Instagram user IDs that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user IDs.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April of 2023. Since April of 2023, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. Based on my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the investigation to date, I submit that there is probable cause to believe that Jabari GRIFFIN (XX/XX/2003) and James POOLE (XX/XX/2005) conspired with known and unknown individuals to commit an armed carjacking in Milwaukee, Wisconsin, on January 30, 2024, in violation of Title 18, United States Code, §§ 2119 (Carjacking) and 924(c) (Brandishing a Firearm During the Commission of a Crime of Violence).

## PROBABLE CAUSE

### January 30, 2024 – Infiniti Q45

6. On January 30, 2024 at approximately 4:45 PM, A.P. (XX/XX/1979) entered his Infiniti Q45 which was parked in a parking lot at 413 N 2nd Street, Milwaukee, Wisconsin. A.P. observed an unknown subject approach from the rear of his vehicle. The subject tapped on A.P.'s driver's window, pointed a firearm at him, and told him to get out of the car and give him everything. A.P. exited his vehicle and handed the subject the vehicle's key fob. As A.P. began to walk away, he observed that a dark colored SUV was parked behind his vehicle blocking him in.

7. The unknown subject entered A.P.'s vehicle and drove westbound on W. St. Paul Avenue, following the dark colored SUV subject vehicle.

2

8. The unknown subject was described as a black male in his 20's, 5'09", with a thin build. He was wearing a black ski mask, black or blue sweatshirt, and black pants. He was armed with two firearms, one silver and the other possibly black.

### Vehicle Recovery

9. At approximately 5:57 PM on January 30, 2024, the above-mentioned Infiniti was recovered by police at 8200 W Burleigh St, Milwaukee, WI following a high-speed chase which resulted in a crash. Five individuals were located in the vehicle: GRIFFIN, POOLE, and three females (Z.S., B.H., and J.P.). POOLE was the driver.

### Witness Statements

10. On February 29, 2024, a federal agent with your affiant's task force spoke with B.H. about the carjacking. On March 4, 2024, the same federal agent spoke with J.P. about the carjacking. Both B.H. and J.P. said that POOLE was the subject who exited the dark colored SUV and carjacked A.P. at gunpoint. Both B.H. and J.P. also said that GRIFFIN ultimately drove the dark colored SUV subject vehicle away. B.H. and J.P. also said that both POOLE and GRIFFIN had guns with them.

11. Shortly after the carjacking of the Infiniti, all of the occupants in the dark colored SUV subject vehicle transferred into the stolen Infiniti, including GRIFFIN, the three females identified above, and an unidentified young black male named "MJ." Both B.H. and J.P. said that MJ was present in the subject vehicle throughout the night, including immediately before and immediately after the carjacking, and was in the Infiniti when POOLE crashed it during the police chase. J.P. further said that "MJ" began driving the subject vehicle away from the carjacking, but that GRIFFIN took over as the getaway driver, at POOLE's direction.

3

12. B.H. identified MJ through his Facebook account: facebook.com/LemmeSeeYoGunIWontTakeit. The Facebook User ID associated with this account is: 100089864558713.

13. J.P. advised that Z.S. was in contact with POOLE through Facebook on January 29, 2024, and continued contact with POOLE after the vehicle pursuit and arrest of POOLE.

**Identification of GRIFFIN's and Z.S.'s Facebook and Instagram Acccounts**

14. Throughout the investigation, analysts with the Federal Bureau of Investigation and the Milwaukee Police Department conducted open source searches of Facebook and Instagram for all subjects who were identified as actors in the carjacking that occurred on January 30, 2024. Analysts were able to locate one or more Facebook and Instagram accounts for two of the subjects.

15. An open source search for GRIFFIN's Facebook account returned two accounts: the first account located was facebook.com/profile.php?id=61552573884141. The Facebook User ID associated with this account is: 61552573884141. The second account located was facebook.com/profile.php?id=100035266607801. The Facebook User ID associated with this account is: 100035266607801. A review of the publicly viewable postings associated with this account match the known photographs of GRIFFIN, which were previously located in various law enforcement databases.

16. An open source search for GRIFFIN's Instagram account returned one account: Instagram.com/bta_bari20/. The Instagram account name associated with this account was bta_bari20. The Instagram User ID associated with this account is: 64059825298. A review of the publicly viewable postings associated with this account match the known photographs of GRIFFIN, which were previously located in various law enforcement databases.

4

17. An open source search for Z.S.'s Facebook account returned two accounts: the first account located was facebook.com/zavaesha.stinson.56. The Facebook User ID associated with this account is: 100043712520182. The second account located was facebook.com/profile.php?id=100082689077562. The Facebook User ID associated with this account is: 100082689077562. A review of the publicly viewable postings associated with this account match the known photographs of Z.S., which were previously located in various law enforcement databases.

18. An open source search for Z.S.'s Instagram account returned one account: Instagram.com/nene_loww/. The Instagram account name associated with this account was nene_loww. The Instagram User ID associated with this account is: 54125337735 A review of the publicly viewable postings associated with this account match the known photographs of Z.S., which were previously located in various law enforcement databases.

19. The date range of January 14, 2024 to February 1, 2024 would allow evidence, including articles of clothing, vehicles, weapons, associates, and the planning and preparation of the violations in question to be identified by investigators.

20. Investigators are seeking to obtain Z.S.'s Facebook and Instagram information and records to locate POOLE'S Facebook and Instagram accounts.

**TECHINICAL INFORMATION**

21. Based on my training and experience, I am aware that individuals involved in criminal activity, including violent offenses with firearms, have also used websites and third-party applications, such as Facebook and Instagram, to communicate regarding their illegal activity and flaunt illegal firearms.

22.    Meta Platforms, Inc. owns and operates the free-access social networking websites called Facebook and Instagram that can be accessed at http://www.facebook.com and http://www.Instagram.com respectively.  Facebook/Instagram allow its users to establish accounts with Facebook/Instagram, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook/Instagram users, and sometimes with the general public.

23.    Facebook/Instagram asks users to provide basic contact and personal identifying information to Facebook/Instagram, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook/Instagram passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook/Instagram also assigns a user identification number to each account.

24.    Facebook/Instagram also collects and retains information about how each user accesses and uses Facebook/Instagram. This includes information about the IP addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

25.    Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log in and log out.

26.    Instagram users can also connect their Instagram and Facebook accounts to use certain cross-platform features, and multiple Instagram accounts can be connected to a single

6

Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Facebook maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

27.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

28.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

29.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a

7

Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

30. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

31. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

8

32.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger.  These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

33.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

34.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

35.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

36.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

37.     Instagram users have several ways to search for friends and associates to follow on Instagram, such as by allowing Facebook to access the contact list on their devices to identify

9

which contacts are Instagram users. Facebook retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates

38.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on the privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("bio"), and a website address.

39.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or store on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of others ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Facebook servers.

40.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are "tagged" in a post by its creator or mentioned in a comment (user can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profile or feeds of other users depending on several factors including privacy settings and which users were tagged or mentioned.

41.     An Instagram "story" is like a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Story Archive" and remain on Facebook

10

servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

42. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

43. Instagram's direct messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, profiles, and other information. Participants to a group conversation can name the group and send invitations to other to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

44. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform, Facebook, and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

45. Instagram has a search function which allows users to search for accounts by username, user activity by location and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable

11

and can be "followed" to generate related updates from Instagram. Facebook retains records of a user's search history and followed hashtags.

46. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

47. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

48. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

49. Facebook collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

50. Social networking providers like Meta Platforms, Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook or Instagram users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking

12

providers like Meta Platforms, Inc. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

51.     As explained herein, information stored in connection with a Facebook or Instagram  account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook or Instagram user's IP log, stored electronic communications, and other data retained by Meta Platforms, Inc., can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook or Instagram account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses; investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the

13

Facebook account owner. Lastly, Facebook or Instagram account activity may provide relevant insight into the Facebook/ Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook/ Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

52. Therefore, the computers of Meta Platforms, Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook/Instagram, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

53. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B1 and B2. Upon receipt of the information described in Section I of Attachment B1 and B2, government-authorized persons will review that information to locate the items described in Section II of Attachment B1 and B2.

## CONCLUSION

54. Based on the foregoing, I request that the Court issue the proposed search warrant.

14

55. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta Platforms, Inc. Because the warrant will be served on Meta Platforms, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

56. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

57. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant

**ATTACHMENT A**

**Property to Be Searched**

To the extent that the information described in Attachment B is within the possession, custody, or control of Instagram/Facebook that is stored at premises owned, maintained, controlled or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California, Instagram/Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| BariWith TheNats | 61552573884141 | January 14, 2024 to February 1, 2024 |
| Bäri Löwëšt ĬññäMĭl | 100035266607801 | January 14, 2024 to February 1, 2024 |
| Thanks ForYo Bape | 100089864558713 | January 14, 2024 to February 1, 2024 |
| Zavaesha Stinson | 100043712520182 | January 14, 2024 to February 1, 2024 |
| Nene Lõww | 100082689077562 | January 14, 2024 to February 1, 2024 |

| INSTAGRAM ACCOUNT USERNAME | INSTAGRAM WEB ADDRESS | DATES |
|---|---|---|
| Bta_bari20 | https://www.instagram.com/bta_bari20/ | January 14, 2024 to February 1, 2024 |
| Nene_loww | https://www.instagram.com/nene_loww/ | January 14, 2024 to February 1, 2024 |

16

**ATTACHMENT B**

**Particular Things to be Seized**

**I.  Information to be disclosed by Meta Platforms, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc. ("Meta"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in **Attachment A**:

(a)  All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for user Account Name with the Usernames and Account IDs listed in **Attachment A**.

(b)  All activity logs for the account and all other documents showing the user's posts and other Facebook or Instagram activities from **January 14, 2024 to February 1, 2024**;

(c)  All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)  All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

17

the user is a member, including the groups' Facebook/Instagram group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from **January 14, 2024 to February 1, 2024,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from **January 14, 2024 to February 1, 2024**;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service used by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook/Instagram posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook/Instagram and any person regarding the user or the user's Facebook/Instagram account, including contacts with support services and records of actions taken.

(r) All content (whether created, uploaded, or shares by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), image stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from **January 14, 2024 to February 1, 2024**.

(s) All content, records, and other information relating to communications sent from or received by the accounts in Attachment A including by not limited to:

a. The content of all communications sent from or received by the Accounts listed in Attachment A, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available.

b. All records and other information about direct, group, and disappearing messages sent from or received by the Accounts listed in Attachment A including dates and times, methods, sources, and destinations (including

19

usernames and account numbers), and status (such as delivered, opened, replayed, screenshot)

c. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants

d. All associated logs and metadata,

(t)     All content, records, and other information relating to all other interactions between the Accounts listed in Attachment A and other Instagram users from **January 14, 2024 to February 1, 2024** including but not limited to:

a. Interactions by other Instagram users with the Accounts listed in Attachment A or its content, including posts, comments, like, tags, follows (including follows unfollows, approved and denied follow requests, and blocks and unblocks), shares invitations, and mentions

b. All users the Accounts listed in Attachment A has followed including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account

c. All contacts and related sync information

d. All associated logs and metadata

Meta is hereby ordered to disclose the above information to the government within 10 days of issuance of this warrant.

20

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 2119 (Carjacking), 18 U.S.C. § 924(c) (possessing and/or brandishing a firearm during a crime of violence) involving Jabari GRIFFIN and Zaveasha STINSON, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Jabari GRIFFIN, Zaveasha STINSON, and others related to the relevant offense conduct of illegal use and possession of firearms and carjacking;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of firearms and sale and use of controlled substances, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.    The review of this electronic data may be

21

conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

22

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b. such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                          Signature